**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SCHENKER, INC.,

        Plaintiff,

v.

NAFTALI INC,

        Defendant.

22 CV 3259

**COMPLAINT**

---

Plaintiff Schenker, Inc., as and for its Complaint against Defendant Naftali Inc, alleges, upon knowledge as to its own acts and upon information and belief as to all other matters, as follows:

**PARTIES**

1. Schenker was and is a corporation duly formed, organized and existing under and by virtue of the laws of the State of New York with a principal place of business in the Commonwealth of Virginia.

2. Schenker is in the business of, among other things, offering logistics solutions and global supply chain management services.

3. Schenker has an office located in Nassau County, New York from which it conducts business nationally and internationally.

4. Naftali was and is a corporation duly formed, organized and existing under and by virtue of the laws of the State of Florida with a principal place of business in the State of Florida.

5. Naftali describes itself as a national manufacturer and marketer of travel and well-being products that has been in business since 2009. According to its website, Naftali produces

and distributes products to help kill germs at home or in healthcare settings, luggage, tech accessories and more.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Plaintiff and Defendant.

7. Naftali has consented to jurisdiction in the State of New York by virtue of its agreement to a contractual choice of forum clause under which Naftali "agree[s] that any legal proceeding relating to the services performed by [Schenker] shall be brought only in a court of competent jurisdiction in the State of New York" and "irrevocably consent[s] to the jurisdiction of any such court in New York State."

8. Venue is proper in this District because of the contractual choice of forum clause.

## FACTUAL BACKGROUND

I. **Contractual Relationship And Naftali's Breach Of Contract**

9. Naftali contracted with Schenker in or about September 2020 for Schenker to provide Naftali with global freight forwarding and logistics services, including the storage of Naftali's goods as needed.

10. Naftali signed Schenker's Credit Application on or about September 1, 2020.

11. The terms of the Credit Application require payment by Naftali to Schenker "NET 15 DAYS."

12. The Credit Application states that "[Naftali] agrees to pay all costs of collection, including reasonable attorneys' fees, as well as interest at the highest rate permissible by law, in the event it fails to pay any charges when due."

13. The Credit Application also states, "The execution of this Credit Application acknowledges that we the authorized signatory have read the Terms and Conditions of service as outlined on the Schenker USA website, www.dbschenkerusa.com and or the reverse side of this Credit Application and agree to such Terms and Conditions."

14. The "Terms and Conditions of service" referenced in the Credit Application are Schenker's General Terms and Conditions of Service.

15. In reliance on Naftali's Credit Application and the references provided by Naftali, Schenker agreed to provide services to Naftali on credit.

16. Schenker provided the contracted for services to Naftali on credit beginning on or about September 1, 2020, including storing Naftali's goods at three warehouses in California – a Schenker operated warehouse in Carson, a warehouse operated by Weber Logistics in Jurupa Valley and a warehouse operated by Weber Logistics in Long Beach.

17. The storage of Naftali's goods at the Weber warehouses was at the request and per the instructions of Schenker pursuant to an agreement between Schenker and Weber.

18. Naftali's goods were received into storage at the Schenker and Weber warehouses on more than one occasion.

19. Schenker issued an invoice to Naftali approximately every month for the storage services Schenker provided to Naftali.

20. Each of Schenker's invoices states, "IMPORTANT: ALL BUSINESS UNDERTAKEN IN CONNECTION WITH THIS TRANSACTION IS SUBJECT TO SCHENKER, INC.'S GENERAL TERMS AND CONDITIONS OF SERVICE AS STATED ON THE REVERSE SIDE HEREOF AND AS STATED ON THE www.dbschenkerusa.com WEBSITE AND IN ACCORDANCE WITH ANY APPLICABLE TARIFF'S."

21.     By continuing to accept services from Schenker and accepting such services on credit, Naftali ratified Schenker's General Terms and Conditions of Service referenced in the invoices and in Schenker's Credit Application.

22.     The sequence of conduct between Naftali and Schenker established a course of dealing and a common basis of understanding between the parties concerning the services provided by Schenker, including the terms and conditions that were to apply to the storage of Naftali's goods.

23.     The General Terms and Conditions of Service contain a provision that states, in relevant part, "16. Compensation of Company. … In any referral for collection or action against the Customer for monies due to the Company, … upon recovery by the Company, the Customer shall pay the expenses of collection and/or litigation, including a reasonable attorney's fees, costs and expenses."

24.     The General Terms and Conditions of Service contain a provision that states, in relevant part, "26. Construction of Terms and Venue. These terms and conditions of service shall be construed according to the laws of the State of New York, without giving consideration to principles of conflict of law."

25.     The General Terms and Conditions of Service contain a provision that states, in relevant part, "26. Construction of Terms and Venue. … The Company and the Customer (a) agree that any legal proceeding relating to the services performed by the Company shall be brought only in a court of competent jurisdiction in the State of New York, and (b) irrevocably consent to the jurisdiction of any such court in New York State."

26.     Naftali repeatedly breached Schenker's credit terms and Schenker's General Terms and Conditions of Service, including by failing to pay Schenker's invoices.

27. By about April 2021, the open balance due to Schenker by Naftali had reached approximately $3.3 million.

28. Schenker terminated Naftali's credit terms in or about April 2021.

**II. Settlement Agreement And Naftali's Breach Of Settlement Agreement**

29. In a series of e-mail exchanges between Naftali's president and Schenker's CEO in April 2021, the parties agreed to settle the open balance due to Schenker on the terms and conditions set forth in the e-mails.

30. The terms and conditions of the settlement agreement included the following provisions:

(a) Naftali agreed to pay and Schenker agreed to accept $1.5 million to settle the open balance due to Schenker in the approximate amount of $3.3 million.

(b) Naftali agreed to remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

(c) Schenker agreed to not charge Naftali for storage at the Schenker and Weber warehouses through June 18, 2021 to allow Naftali time to remove the goods, but storage after that date would be subject to new terms and conditions.

31. Naftali paid the agreed $1.5 million to Schenker.

32. Naftali did not remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

**III. Subsequent Events**

33. Naftali began to accrue new storage charges after it failed to remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

34.     Weber charged and continues to charge Schenker for the storage of Naftali's goods at the Weber warehouses after June 18, 2021.

35.     Beginning no later than July 2021, Schenker repeatedly requested Naftali, in writing and orally, to remove all of Naftali's goods from the Schenker and Weber warehouses.

36.     While Naftali eventually removed all of its goods from the Schenker warehouse and the Weber Long Beach warehouse and removed some goods from the Weber Jurupa Valley warehouse, there were approximately 1459 pallets remaining at the Weber Jurupa Valley warehouse as of March 25, 2022.

37.     Counsel for Schenker sent a letter to Naftali on March 28, 2022 to make clear that Naftali was required to remove all of its goods from the Weber Jurupa Valley warehouse before May 1, 2022 and to pay outstanding storage charges in the amount of $492,632.43.  The letter advised Naftali that there were ongoing storage or other charges in the approximate amount of $59,000 per month.

38.     Naftali removed some, but not all, of its goods from the Weber Jurupa Valley warehouse before May 1, 2022.

39.     Naftali removed additional, but not all, goods from the Weber Jurupa Valley warehouse after May 1, 2022.

40.     There were approximately 560 pallets remaining at the Weber Jurupa Valley warehouse as of May 31, 2022.

41.     To date, Schenker has issued invoices to Naftali totaling $568,401.59 for the storage of Naftali's goods at the Schenker and Weber warehouses after June 18, 2021:

| Invoice No. | Invoice Date | Amount |
|---|---|---|
| 202000697 | 22-Jul-2021 | $ 37,845.15 |
| 202016926 | 16-Aug-2021 | $ 23,788.38 |
| 202076571 | 03-Nov-2021 | $135,236.80 |
| 202091319 | 23-Nov-2021 | $ 59,613.00 |
| 202103599 | 09-Dec-2021 | $ 61,600.10 |
| 202152901 | 14-Feb-2022 | $ 61,600.10 |
| 202177031 | 16-Mar-2022 | $112,948.90 |
| 202209709 | 25-Apr-2022 | $ 53,685.00 |
| 202224997 | 12-May-2022 | $ 21,033.50 |
| 202228244 | 17-May-2022 | $  1,050.66 |
|  | TOTAL | $568,401.59 |

42. Naftali has not paid any of the invoices for the storage of its goods at the Schenker and Weber warehouses after June 18, 2021.

43. Charges for the storage of Naftali's goods at the Weber Jurupa Valley warehouse continue to accrue at the rate of approximately $25,000 per month.

## AS AND FOR A FIRST CAUSE OF ACTION

44. Schenker repeats and realleges each and every allegation set forth in paragraphs "1" through "43" of this Complaint with the same force and effect as if more fully set forth herein.

45. Schenker agreed to not charge Naftali for storage at the Schenker and Weber warehouses through June 18, 2021 to allow Naftali time to remove the goods, but storage after that date would be subject to new terms and conditions.

46. Naftali did not remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

47. Naftali began to accrue new storage charges after it failed to remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

48. To date, Schenker has issued invoices to Naftali totaling $568,401.59 for the storage of Naftali's goods at the Schenker and Weber warehouses after June 18, 2021.

49. Naftali has not paid any of the invoices for the storage of its goods at the Schenker and Weber warehouses after June 18, 2021.

50. Charges for the storage of Naftali's goods at the Weber Jurupa Valley warehouse continue to accrue at the rate of $25,000 per month.

51. Schenker is entitled to payment in an amount no less than $568,401.59 plus interest, attorneys' fees and costs for the storage of Naftali's goods at the Schenker and Weber warehouses since June 18, 2021.

## AS AND FOR A SECOND CAUSE OF ACTION

52. Schenker repeats and realleges each and every allegation set forth in paragraphs "1" through "51" of this Complaint with the same force and effect as if more fully set forth herein.

53. Schenker incurred and continues to incur costs and expenses to store Naftali's goods after June 18, 2021.

54. Naftali benefitted and continues to benefit from the storage of its goods by Schenker because the storage furthers and benefits Naftali's business, as well as safeguards the goods.

55. It would be unjust for Naftali to retain the benefit of having its goods stored without paying for such storage.

56. Schenker is entitled to be paid and reimbursed for the storage of Naftali's goods.

57. In the alternative to its breach of contract claims, Schenker is entitled to restitution to restore Schenker to its status prior to providing storage for Naftali's goods after June 18, 2021.

## AS AND FOR A THIRD CAUSE OF ACTION

58. Schenker repeats and realleges each and every allegation set forth in paragraphs "1" through "57" of this Complaint with the same force and effect as if more fully set forth herein.


59. The settlement agreement between Schenker and Naftali is a legally binding and enforceable contract. (Schenker reserves the right to amend its Complaint to seek rescission of the settlement agreement and to seek corresponding damages.)

60. All obligations under the settlement agreement between Schenker and Naftali to be performed on the part of Schenker were performed, waived or otherwise excused.

61. Naftali breached its settlement agreement with Schenker by failing to remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

62. Naftali otherwise breached its settlement agreement with Schenker.

63. Schenker suffered and continues to suffer damages because of the breach of the settlement agreement by Naftali.

64. Schenker is entitled to recover the damages that it suffered and continues to suffer because of the breach of the settlement agreement by Naftali.

## AS AND FOR A FOURTH CAUSE OF ACTION

65. Schenker repeats and realleges each and every allegation set forth in paragraphs "1" through "64" of this Complaint with the same force and effect as if more fully set forth herein.

66. Naftali agreed to remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

67. Naftali did not remove all of its goods from the Schenker and Weber warehouses by June 18, 2021.

68. There were approximately 560 pallets remaining at the Weber Jurupa Valley warehouse as of May 31, 2022.

69. All obligations under the settlement agreement between Schenker and Naftali to be performed on the part of Schenker were performed, waived or otherwise excused.

70. In addition and/or in the alternative to and without waiving any other rights or remedies it may have, Schenker is entitled to specific performance and a judgment requiring Naftali to fully perform its obligations under the settlement agreement, including the immediate removal of all of Naftali's goods from the Weber Jurupa Valley warehouse.

71. There is no adequate remedy at law to the requested specific performance.

**WHEREFORE**, Plaintiff prays as follows:

A. For judgment on the First, Second and Third Causes of Action in favor of Plaintiff and against Defendant awarding Plaintiff damages in an amount to be determined at trial;

B. For judgment on the Fourth Cause of Action in favor of Plaintiff and against Defendant requiring Defendant to fully perform its obligations under the settlement agreement, including the immediate removal of all of Defendant's goods from the Weber Jurupa Valley warehouse; and

C. For such other and further relief as the Court deems just and proper under the circumstances, together with attorneys' fees, interest and the costs of this action.

Dated: New York, New York
June 2, 2022

> NICOLETTI HORNIG & SWEENEY
> *Attorneys for Plaintiff*
>
> By: /S *Kevin J.B. O'Malley*
> Kevin J.B. O'Malley
> Wall Street Plaza
> 88 Pine Street, Seventh Floor
> New York, New York 10005
> (212) 220-3830
> komalley@nicolettihornig.com